1
2
3
4
5
6
7            IN THE UNITED STATES DISTRICT COURT
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
11
12   ARWA SAGIER,                          Case No.: C11-05537 JSC

                                          **ORDER GRANTING DEFENDANTS'**
13              Plaintiff,                 **MOTION FOR SUMMARY**
                                          **JUDGMENT AND DENYING**
14        v.                               **PLAINTIFF'S CROSS MOTION (Dkt.**
                                          **Nos. 8, 13)**
15
     UNITED STATES CITIZENSHIP AND
16   IMMIGRATION SERVICE, et al.,
17
                Defendants.
18
19
20        Plaintiff Arwa Sagier contends Defendants have violated the Administrative

21   Procedure Act ("APA") by failing to issue a decision on her 2008 application for lawful

22   permanent residence.[1]  Accordingly, she filed an amended complaint seeking a writ of

23   mandamus to compel action on her I-485 Application to Adjust Status and other

24   declaratory and injunctive relief.  (Dkt. No. 5 at 6-7.)  Now pending before the Court are

25   Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment

26   (Dkt. No. 8) and Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 13).  After

27   carefully considering the evidence submitted by the parties, and having had the benefit of

28   _____

[1]  The parties consented to the jurisdiction of a United States magistrate judge pursuant to
28 U.S.C. § 636(c). (Dkt. Nos. 4, 10.)

United States District Court
Northern District of California

oral argument on April 26, 2012, the Court DENIES Defendants' Motion to Dismiss and Plaintiff's Cross-Motion for Summary Judgment and GRANTS Defendants' alternative Motion for Summary Judgment.  While the Court concludes it has jurisdiction to decide Plaintiff's complaint, it also concludes that the government's delay—thus far—is not so unreasonable as to warrant judicial intervention.

## BACKGROUND

Based on her membership in a social group, Plaintiff, a citizen of Sudan, was granted asylum in the United States by the San Francisco Asylum Office on October 23, 2006.  (Dkt. No. 5 at 3.)  Plaintiff had previously applied for, and was granted, asylum in the United States in 1999 based on her political activities in Sudan; however, her asylee status was terminated in 2005 "after it was determined that [she] had availed herself of the protection of Sudan by returning to that country as an asylee."  (Dkt. No. 5 ¶ 5.)

In November of 2007 Plaintiff filed a Form I-485 Application to Adjust Status with the United States Citizen and Immigration Services ("USCIS") to become a lawful permanent resident.  (Dkt. No. 5 ¶ 5.)  Three months later, in February of 2008, the USCIS denied Plaintiff's I-485 application due to "the political activities that formed the basis of her 1999 asylum application."  (Id.)  Defendants contend that "Plaintiff's asylum claim included information that while in college, she was active with the Sudanese Allied Forces (SAF), an organization that meets the definition of an undesignated (Tier III) terrorist organization."  (Dkt. No. 8-1 ¶ 16.)  Specifically, Defendants assert that "Plaintiff distributed pamphlets calling for the Sudanese masses to rise in revolt against the government" and also solicited donations (approximately $100 U.S. dollars) "to sponsor the opposition military operations in the eastern and southern part of Sudan."  (Id. ¶ 17.)  As a result, they contend she is inadmissible under INA § 212(a)(3)(B)(i)(I) for engaging in terrorist activity.  (Id. ¶ 18.)

Plaintiff denies membership in the SAF and insists that her asylum application only acknowledges passing out pamphlets and raising approximately $100 for the National Democratic Alliance, not the SAF. (Dkt. No. 17 at 34.)  She denies her asylum

application supports a finding of any involvement with the SAF beyond having a conversation in Sudan with a woman "who believed that the SAF leader was strong and genuine," which caused Plaintiff "to want to learn more about this opposition group." (Dkt. No. 17 at 36-37) (internal quotation omitted).  Plaintiff also "acknowledges that on one occasion she was detained and questioned by security officers in the Sudan after she had a conversation with a friend who was a member of the SAF," during which the officers "wrongly accused" Plaintiff of various things, including "cooperating with the SAF." (Id. at 7, 34-35.)

Approximately two months after Defendants initially denied Plaintiff's I-485 application, the USCIS reopened Plaintiff's application and placed it on hold pursuant to a March 26, 2008 policy memorandum. (Dkt. No. 8-1 ¶¶ 7, 23.)  In December 2007, Congress adopted the Consolidated Appropriations Act of 2008 (CAA) which, among other things, increased the authority of the Secretary of Homeland Security to exempt certain terrorist-related inadmissibility grounds.  (Id. ¶¶ 7, 20.)  The March 2008 memorandum "instructed that adjudicators should withhold adjudication of cases that could benefit from the Secretary's expanded discretionary authority under the CAA." (Id. ¶ 23.)  Because Defendants at some point in the future might find Plaintiff admissible notwithstanding what Defendants view as otherwise disqualifying conduct, Defendants placed Plaintiff's application on hold on April 23, 2008, where it remains today four years later.  (Id. ¶ 7.)

Plaintiff seeks an order requiring Defendants to act on her delayed application. Defendants have moved to dismiss on the ground that this Court lacks jurisdiction over Plaintiff's claim and, in any event, Plaintiff cannot allege any injury from Defendants' decision to place her application on hold.  In the alternative, Defendants move for summary judgment on the ground that the as-of-now four-year delay is reasonable as a matter of law.  Plaintiff has filed a cross motion for summary judgment arguing that the four-year delay violates the APA as a matter of law.

United States District Court
Northern District of California

**DISCUSSION**

**I.     Defendants' Motion to Dismiss**

A. <u>Jurisdiction</u>

Defendants first move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court does not have subject matter jurisdiction "over immigration suits that concern decisions or actions that are committed to agency discretion." (Dkt. No. 8 at 18.) Defendants rely on the following section of the INA:

> . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. §1252(a)(2)(B)(ii). Defendants essentially argue that refraining from issuing a decision in Plaintiff's case is, in and of itself, a "decision" or "action" insulated from judicial review by § 1252(a)(2)(B)(ii). The Court disagrees.

District courts within the Ninth Circuit have consistently held that §1252(a)(2)(B)(ii) does not preclude district court jurisdiction over claims of unreasonable delay in adjusting immigration status applications. <u>See, e.g.</u>, <u>Tewolde v. Wiles</u>, 2012 WL 750542 at *3 (W.D. Wash. Mar. 7, 2012); <u>Mugomoke v. Curda</u>, 2012 WL 113800 at *4-5 (E.D. Cal. Jan.13, 2012); <u>Islam v. Heinauer</u>, 2011 WL 2066661 at *3 (N.D. Cal. May 25, 2011); <u>Sultan v. Roark</u>, 2010 WL 1992195 at *2 (E.D. Cal. May 13, 2010); <u>Ahmed v. Scharfen</u>, 2009 WL 55939 at *5-7 (N.D. Cal. Jan.7, 2009); <u>Kousar v. Mueller</u>, 549 F.Supp.2d 1194, 1197-98 (N.D. Cal. 2008); <u>Chen v. Chertoff</u>, 2008 WL 205279 at *2 (N.D. Cal. Jan. 23, 2008); <u>Liu v. Chertoff</u>, 2007 WL 2119427 at *1 (N.D. Cal. July 23, 2007). In essence, "there is a difference between the [USCIS's] discretion over *how* to resolve an application and the [USCIS's] discretion over *whether* it resolves an application." <u>Singh v. Still</u>, 470 F.Supp.2d 1064, 1067 (N.D. Cal. 2007). Since "the duty to act on an application to adjust status is mandatory, not discretionary," this Court has subject matter jurisdiction. <u>Ahmed</u>, 2009 WL 55939 at *7.

4

United States District Court
Northern District of California

Defendants' reliance on <u>Hassan v. Chertoff</u>, 593 F.3d 785 (9th Cir. 2010) is unavailing.  In <u>Hassan</u>, the plaintiff appealed a district court's refusal to review the government's denial of his application for immigration status adjustment.  <u>Id</u>. at 787. The Ninth Circuit held that §1252(a)(2)(B)(ii) precludes "judicial review of a discretionary determination," and "denial of Hassan's adjustment of status application on the basis that he poses a threat to national security is a determination committed to the discretion of the Attorney General or the Secretary of Homeland Security." <u>Id</u>. at 788. Here, in contrast, there is no denial—no action by Defendants; instead, Defendants have placed Plaintiff's application "on hold."  Further, the Court is unpersuaded that Defendants' intentional decision to place Plaintiff's application on hold is a discretionary decision protected from judicial review.  The bottom line is that Defendants have chosen not to act on Plaintiff's application—this is precisely the type of inaction the district courts have held falls within their jurisdiction.

Defendants' further assertion that the decision to apply a discretionary exemption from "terrorist-based inadmissibility provisions" to Plaintiff  is "wholly discretionary and judicially unreviewable" under §1252(a)(2)(B)(ii) (Dkt. No. 8 at 20) misses the point. "Whether or not this is the case is irrelevant" because Plaintiff's amended complaint "does not challenge any such decision." <u>Ahmed</u>, 2009 WL 55939 at *7; <u>see also</u> <u>Islam,</u> 2011 WL 2066661 at *3 n.6 (reaching the same conclusion and citing <u>Ahmed</u>). Regardless of whether the decision to grant or deny an exemption is reviewable, or even whether the decision to grant or deny adjustment of status is reviewable, here Plaintiff only challenges Defendants' failure to take any action on her application.

B.     <u>Failure to State a Claim</u>

Defendants next move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, Defendants insist that the complaint fails as a matter of law because Plaintiff "makes no allegation that adjudication would benefit her in any particular or substantive manner," and her request for injunctive relief is therefore unwarranted. (Dkt. No. 8 at 22-23.)  In evaluating a motion to dismiss under

Rule 12(b)(6), all allegations of material fact presented by Plaintiff are accepted as true, and pleadings are construed in the light most favorable to Plaintiff. <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiff's complaint alleges several advantages over asylee status she contends she would receive if she were to become a lawful permanent resident. (Dkt. No. 5 ¶ 12.) Her reply declaration offers further details as to the advantages of legal permanent resident status, so, if necessary, she could amend her complaint. (Dkt. No. 17 at 19 ¶ 2.) She does not need to because viewing the allegations in the complaint in the light most favorable to Plaintiff, she is harmed by the deprivation of these benefits she would enjoy but for Defendants' delay in processing her application.

Defendants' assertion that if forced to make a decision it would likely deny Plaintiff's application does not mean she has failed to state a claim. First, Defendants are asking the Court to consider material outside the complaint—namely, the declaration of Michael Rexroat—and the Court may not do so on a 12(b)(6) motion. <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Second, it has not been established as a matter of law that Defendants would deny her application if they finally made a decision. Third, even if her application is ultimately denied, Plaintiff believes she will be able to appeal the decision with respect to her alleged terrorist ties. Thus, Defendants' delay is preventing her from challenging that decision and removing that cloud over her status. For the same reasons, Plaintiff's allegations are likewise sufficient to support her claims for injunctive relief for the purposes of surviving a motion to dismiss.

Accordingly, Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) is DENIED.

## II.     THE CROSS MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper when the evidence before the Court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there

United States District Court
Northern District of California

is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Even though each party has moved for summary judgment, the Court has an independent responsibility to determine whether disputed issues of material fact exist with respect to either motion. <u>Fair Housing Council of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001).

The Administrative Procedures Act ("APA") permits judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A plaintiff can claim relief under § 706(1) by "assert[ing] that an agency failed to take a discrete agency action that it is required to take." <u>Norton v. South Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004). "[F]ailure to act on an I-485 application falls within the APA's default rule: 'With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.'" <u>Mugomoke,</u> 2012 WL 113800 at *4.

Therefore, the question before the Court is whether Defendants' delay in processing Plaintiff's I-485 application is reasonable. Unreasonable delay in the resolution of immigration applications depends on the particular facts of a case. <u>Islam,</u> 2011 WL 2066661 at *7. The parties agree the Court's inquiry is guided by the "TRAC" factors set forth by the Ninth Circuit:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking

behind agency lassitude in order to hold that agency action is unreasonably delayed."

Independence Min. Co., Inc. v. Babbitt, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting Telecommunications Research and Action Center v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984))(internal citation omitted).

### A. The TRAC Factors

*First Factor: Rule of Reason*

Defendants contend that four years is not an unreasonable length of time to determine whether Plaintiff will benefit from an exemption for terrorist-related inadmissibilty grounds.  Terrorist-related determinations involving immigration applicants are "not made lightly" and "may be time-consuming."  Islam, 2011 WL 2066661 at *7 (quoting Khan v. Scharfen, 2009 WL 941574 at *9 (N.D. Cal. April 6, 2009)).  The undisputed evidence establishes that

> in order to exempt the INA's terrorist-related inadmissibility provisions from applying to a category of individuals, or a specific individual, the Secretary of Homeland Security, the Secretary of States, and the Attorney General must consult.  Various factors, including national security, humanitarian, and foreign policy concerns, must be weighed carefully before a decision is made.  There is much interagency discussion on how best to approach and tailor particular exemptions.  The large number of possible exemptions that may be considered, combined with the deliberative nature of the process, causes significant time to pass before adjudications ultimately can take place.

(Dkt. No. 8-1 ¶ 22.)  There is also evidence that this deliberative process—while not yet benefiting Plaintiff—is not a sham: between mid-2006 and November 30, 2011, Defendants granted a total of 14,064 exemptions in cases involving terrorist-related inadmissibility grounds.  (Id. ¶ 24.)  Further, between June 2010 and November 30, 2011, Defendants released over 3,400 cases from hold.  (Id. ¶ 25.)

Courts evaluating similar I-485 application determinations, that is, applications that have been placed on hold due to a terrorist-related inadmissibility finding, have found delays of a few years permissible but delays approaching a decade unreasonable.  See, e.g, Mugomoke, 2012 WL 113800 at *9 (denying the defendants' summary

judgment motion for a nearly seven-year delay); <u>Tewolde</u>, 2012 WL 750542 at *9 (denying the defendants' summary judgment motion for a nearly nine-year delay); <u>Islam</u>, 2011 WL 2066661 at *6-8 (granting defendants' summary judgment motion for a three-year delay); <u>Hassane v. Holder</u>, 2010 WL 2425993 at *5 (W.D. Wash. June 11, 2010)(granting defendants' summary judgment motion for a nearly two-year delay).   No court in this district has held that a delay of four years because of a similar "hold" is unreasonable.

Defendants, however, have indicated an intent to maintain Plaintiff's application hold unless and until "an exercise of the discretionary exemption authority that would apply to Plaintiff becomes available, and accompanying formal policy guidance authorizing adjudication is issued."  (Dkt. No. 8-1 ¶ 27.)   In other words, if there is no such exercise of discretionary exemption authority, it appears Plaintiff's application will remain on hold indefinitely.  At least one court has held that "for defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable." <u>Mugomoke</u>, 2012 WL 113800 at *7.  At the point the court ruled, however, Plaintiff's application had been delayed for nearly seven years.

Plaintiff responds that even if in some cases it may be reasonable to hold an application for several years to determine if an exemption from inadmissibility is warranted, such delay is unreasonable in this case because Defendants' reason for concluding that Plaintiff needs an exemption is wrong in the first place.  As a preliminary matter, it is important to clarify what the Court is not deciding.  The Court is not deciding whether Defendants must grant (or deny) Plaintiff's I-485 application because Defendants' determination that she engaged in disqualifying terrorist-related activity is correct (or incorrect).  Such a claim is not in the amended complaint, and the Court has made no ruling as to whether it would have jurisdiction over such a claim.  Instead, the Court understands Plaintiff to be making a different argument: that in evaluating the reasonableness of Defendants' delay, the Court should examine whether Plaintiff needs

an exemption in the first place. If not, argues Plaintiff, then placing her application on hold for four years pending a possible exemption does not follow a "rule of reason," even if it might for someone else under different circumstances.

There may be a case where there is such a paucity of evidence of terrorist-related activity, or where the allegation of terrorist-related activity is being used as a subterfuge to prevent a ruling on the I-485 application, that a delay of four years, or perhaps even far less, would not satisfy a rule of reason. But this is not that case. Plaintiff admits a connection—however tenuous—with the SAF. (Dkt. No. 17 at 35-37.) And she admits she solicited donations to sponsor the opposition military operations in the eastern and southern part of Sudan. (Id. at 34.) She and Defendants simply disagree as to the significance of this evidence: Defendants believe that this evidence makes her inadmissible while Plaintiff does not.

Plaintiff also makes a second argument: she contends that as a legal matter Defendants are barred by issue preclusion from contending that she is inadmissible due to terrorist-related activities. She maintains that the immigration judge who granted her asylum status must have determined that Plaintiff "was not inadmissible based on terrorism." (Dkt. No. 13 at 18.) Since "a judge in an adversarial setting made a valid and final determination that [Plaintiff] was not inadmissible based on terrorism," Plaintiff contends that Defendants are now precluded from determining otherwise. (Dkt. No. 13 at 18.)

"Issue preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same parties." Littlejohn v. United States, 321 F.3d 915, 923 (9th Cir. 2003). The party seeking to apply issue preclusion must show: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. Id. Issue preclusion can apply to certain immigration proceedings. Ramon-Sepulveda v. I.N.S., 824 F.2d 749, 750-51 (9th Cir. 1987).

The Court is unpersuaded that issue preclusion bars Defendants from denying Plaintiff's I-485 application based on terrorist-related activities.  Plaintiff has not established that the issue of her relationship with the SAF, and whether it renders her inadmissible, was actually litigated in the asylum proceedings.  To support her contention, Plaintiff attaches a one-page "summary of the oral decision entered on October 23, 2006" by Immigration Judge Carol A. King. (Dkt. No. 13, Ex. B.)  This document indicates little other than that Plaintiff's application for asylum was granted, and both parties waived appeal.  (Id.)  There is no information on what facts or factors were considered by Judge King or "the legal reason for the decision."  (Dkt. No. 14 at 14.)

In addition, Plaintiff's argument assumes that once an alien is granted asylum status, the alien's application for adjustment of status must be granted regardless of the existence of any evidence of terrorist-related activity.  The statute, however, is written in permissive rather than mandatory terms: "the Attorney General . . . may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who, . . . is admissible . . . as an immigrant under this chapter at the time of examination for adjustment of such alien."  8 U.S.C. § 1159(b)(5).  Further, the law requires the Attorney General to make a finding of admissibility at the time the application for adjustment of status is considered.  Id.  Such a condition would make no sense if granting asylum means that the admissibility of the alien cannot later be challenged upon an application for adjustment of status.

*Second Factor: The Statutory Scheme*

There is no statutory timetable "governing an applicant's adjustment of status or . . . discretion to use exemptions;" the "USCIS must process [Plaintiff's] application within a reasonable time." Hassane, 2010 WL 2425993 at *4 (internal citations omitted). Plaintiff nonetheless cites Wang v. Gonzalez, 2007 WL 4463009 at *3 (N.D. Cal. Dec. 17, 2007) for the proposition that delays in adjudication of adjustment of status exceeding two years are presumptively unreasonable.  The Court declines to apply such a

11

presumption here.  As courts have noted, the "adjudication of cases involving persons who might benefit from an exemption," such as Plaintiff, are distinguishable "from cases involving the failure to process name checks, where courts have concluded that two to four year delays are unreasonable," such as <u>Wang</u>.  <u>Islam</u>, 2011 WL 2066661 at *8.

*Third and Fifth Factors: Affect on Human Health and Welfare and Prejudice*

The third and fifth factors overlap and "require the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay."  <u>Tewolde</u>, 2012 WL 750542 at *7.  Defendants argue there is no prejudice to Plaintiff since, if forced to issue a decision now, Defendants would likely deny her application.  Plaintiff counters that she cannot appeal an unfavorable decision until such a decision is issued and that she is therefore harmed by the delay.  Though Plaintiff has not articulated any immediate danger of deportation or impairment to her physical needs or safety, she asserts that a green card would help her employment prospects and save her various fees that she currently pays for work and travel. (Dkt. No. 17, Ex. 1.)  As previously stated (<u>see</u> <u>supra</u> at 5), the Court agrees Plaintiff may be harmed by Defendants' delay, although the harm is primarily financial and emotional.

*Fourth Factor: Effect of Expediting Delayed Action*

Defendants contend that an order requiring the expedition of Plaintiff's application would require them "to truncate any consideration of a potential exemption that might benefit Plaintiff." (Dkt. No. 8 at 29.)  This response, however, assumes that Plaintiff seeks an order expediting Defendants' consideration of whether she should be made exempt from rules that would otherwise render her inadmissible.  As the Court understands it, Plaintiff merely seeks a ruling on her application for adjustment of status; if that ruling is a denial because Defendants have not yet determined whether she is eligible for an exemption, then she would prefer the denial to an indefinite and uncertain wait.  At oral argument, the Court inquired of Defendants as to why they could not simply deny Plaintiff's I-485 so she could take her chances with an appeal since she does not want to wait for the government's decision on an exemption, a decision that may

12

United States District Court
Northern District of California

never materialize. Defendants had no response. Accordingly, this factor weighs in favor of finding the delay unreasonable.

*Sixth Factor: Bad Faith*

There is no evidence or allegation of Defendants' bad faith; to the contrary, Defendants appear to be treating Plaintiff the same as all applicants in her circumstances. However, a court need not find that an agency acted in bad faith to conclude unreasonable delay. Independence Min. Co., Inc., 105 F.3d at 510. Accordingly, this factor is neutral.

**B. The Four-Year Delay is not Unreasonable**

Viewing these factors in their totality, the Court concludes that Defendants' four-year delay is not unreasonable. Defendants are actively investigating and applying exemptions, and thus it is not yet unreasonable to hold Plaintiff's application to determine if an exemption will apply to her situation, especially given that she is not under a threat of deportation and is able to work and travel, although not as cheaply or freely as she would prefer. At some point, however, the delay will become unreasonable, especially where, as here, the Plaintiff indicates she would prefer a denial of her I-485 application to an indefinite wait, and the government articulates no reason why it cannot adjudicate her application without considering an exemption.

**CONCLUSION**

For the reasons stated above, the Court DENIES Defendants' motion to dismiss and Plaintiff's cross-motion for summary judgment and GRANTS Defendants' motion for summary judgment. Since there is a point at which the inaction on Plaintiff's I-485 application could become unreasonable, this ruling is without prejudice.

**IT IS SO ORDERED.**

Dated: May 3, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

13